# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:** | |
| ROBERT BERCHTOLD and SANDRA BERCHTOLD, husband and wife, | **Bankruptcy Case No. 03-42102** |
| **Debtors.** | |

| | |
|---|---|
| ROBERT BERCHTOLD, | |
| **Plaintiff,** | Adv. Proceeding No. 04-6183 |
| vs. | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| **Defendant.** | |

## MEMORANDUM OF DECISION

**Appearances:**

    Jay A. Kohler, Idaho Falls, Idaho, Attorney for Plaintiff.

    Scott Tschirgi, JONES, GLEDHILL, HESS, FUHRMAN & EIDEN, P.A., Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

Plaintiff Robert Berchtold and his wife Sandra Berchtold are Chapter 7 debtors (hereafter jointly referred to as "Debtors"). In this adversary proceeding, Plaintiff seeks to discharge approximately $120,000 in student loan debt owed to Defendant Educational Credit Management Corporation. The central issue in the action is whether repaying this debt would represent an undue hardship for Debtors. 11 U.S.C. § 523(a)(8).

The Court conducted a trial on June 2, 2005. After considering the evidence and testimony presented; the arguments of the parties, including post-trial submissions; and the relevant legal authorities, this Memorandum of Decision constitutes the Court's findings of fact, conclusions of law and disposition of the issues. Fed. R. Bankr. P. 7052.

## FACTS[1]

### A. Mr. Berchtold's background, employment history and health.

Robert Berchtold is fifty-two years old and lives in Idaho Falls, Idaho, with his wife Sandra Berchtold and their eleven year old daughter.

In 1995, at age forty-two, Mr. Berchtold retired from military service after having served almost twenty years. Ex. 1. Mr. Berchtold described his work in the military as being primarily combat related, involving the use of

---

[1] In making its findings of fact, the Court has relied in part upon its opportunity to observe the witnesses testify and to assess their demeanor and credibility. The Court has assigned appropriate weight to that testimony in this Decision.

MEMORANDUM OF DECISION - 2

weapons and explosives. He feels he did not acquire any marketable job skills in the service, although he was able to obtain a college degree in general studies.

At the time of his discharge, Mr. Berchtold was stationed in Kentucky. He initially went to work in a factory but, six months later, decided to purse a career as a chiropractor. Towards that end, he enrolled in a community college to take prerequisite courses. Then, in the summer of 1998, Mr. Berchtold enrolled at Palmer College of Chiropractic in Iowa. Unfortunately, after three unsuccessful attempts to pass a required neuroanatomy course, the college declined to allow Mr. Berchtold to continue his studies beyond the winter term of 2002. Mr. Berchtold financed his chiropractic studies with student loans, with the balance now amounting to $120,171. Ex. A.

After leaving Palmer College, Mr. Berchtold worked as a pizza delivery driver and eventually started working in the home repair field. Despite some limited success, in the summer of 2003, Debtors decided to move from Iowa to Idaho Falls to be closer to their family. In Idaho, Mr. Berchtold applied for and worked at a variety of jobs. Exs. 10, 12. Between September 2003 and July 2004, he worked a few days on a production line, but experienced vertigo and nausea from the motion of the line; he temporarily replaced an ill driver at a transportation company, but did not continue after the regular driver returned to work; and he worked as a satellite dish installer until, after a few months, he felt that the work

was too demanding given his physical ailments. After leaving his job installing satellite dishes, Mr. Berchtold returned to the home repair field, ultimately electing to start his own sheet rock installation business despite his health problems.

Regarding those health problems, in 2002, Mr. Berchtold submitted a disability claim to the Department of Veterans Affairs. The VA concluded that Mr. Berchtold had an aggregate 60% disability, Ex. 6, attributable to a degenerative disc disease of his spine (10%); recurrent left ankle problems (10%); tinnitus (a ringing in the ears) (10%); diabetes (20%); and peripheral neuropathy for each extremity (10%). In addition to these problems, Mr. Berchtold complains of asthma, bad memory and extreme physical fatigue if he performs manual labor for more than six hours per day, four days per week. Mr. Berchtold restricts his sheet rock installation work to accommodate his physical limitations.

### B. Mrs. Berchtold's background, employment history and health.

Mrs. Berchtold is forty-eight years old. She has been a registered nurse since 1987, and currently works as a supervising psychiatric nurse at the Eastern Idaho Regional Medical Center. While Mrs. Berchtold testified she suffers from a few medical difficulties, she is being treated for those problems and they do not appear to affect her ability to work as a nurse.

### C. Debtors' income.

Mrs. Berchtold's net monthly income is $3,076. She testified that

MEMORANDUM OF DECISION - 4

she anticipates there will be no increases in her income other than occasional, small cost-of-living adjustments.[2]

Mr. Berchtold receives cash military benefits and earns a modest amount installing sheet rock. He receives three separate monthly payments from the government for his military benefits, which total $1,322.72.[3]

Mr. Berchtold testified that he generates net profits from his business of just over $500 per month. In his pre-trial brief, Docket No. 23, Mr. Berchtold again claims he earns net income of $556 per month. These representations are somewhat inconsistent with Debtors' 2004 tax returns, Ex. K, which disclose that Mr. Berchtold earned only $3,000 in gross revenues from his sheet rock business

---

[2] Exhibit 16 contains Debtors' bank statements and Mrs. Berchtold's earning statements for eleven two-week periods. They show her net earnings were: $1,712.76 on 1-1-05; $1,280.80 on 1-15-05; $1,278.13 on 2-3-05; $1,356.56 on 2-17-05; $1,304.87 on 3-3-05; $1,417.50 on 3-12-05; $1,457.87 on 3-26-05; $1,441.61 on 4-9-05; $1,708.47 on 4-23-05; $1,341.48 on 5-12-05; and $1,315.58 on 5-26-05. (The dates are not precisely two weeks apart, some dates coming from the earnings statements, and others from bank statements.) These figures total $15,615.63, and average $1,419.60 per two-week period. Multiplying the $1,419.60 average by the twenty-six two-week periods in a year renders net annual income of $36,909.60, and yields an average monthly net income of $3,076 ($36,909.60/12 = $3,075.80). *See United Student Aid Funds, Inc. v. Pena* (*In re Pena*), 155 F.3d 1108, 1112–13 (9th Cir. 1998) (approving of averaging figures over a reasonable period of time). Plaintiff's Exhibit J, Debtors' bankruptcy Schedule I, listed Mrs. Berchtold's net monthly income as $2,207, but the Court does not find this schedule to be as reliable or persuasive as the earnings and bank statements.

[3] $188.82 of this amount is paid to Mr. Berchtold to correct a prior underpayment and will terminate in about eight years. However, the Court includes this amount in its analysis because Mr. Berchtold currently receives it, he will continue to receive it for a significant period of time, and its loss will likely be offset by cost-of-living increases in Mrs. Berchtold's income.

MEMORANDUM OF DECISION - 5

for the approximately eight months that he operated that business in 2004. Mr. Berchtold also testified that his business is seasonal and that he will be busier during the summer months. Considering this disconsonant evidence, the Court is persuaded that, more probably than not, Mr. Berchtold's net monthly income from his business is $556. Therefore, the Court finds that Mr. Berchtold's total net monthly income is $1,878.72, and Debtors' combined net monthly income is $4,954.72.[4]

### D. Debtors' expenses.

Debtors report monthly expenses of $4,448.04 via a revised Schedule J that they updated to reflect changes in their expenses occurring since they filed for bankruptcy. Defendant presented no persuasive evidence to contradict these figures, and so the Court accepts that Debtors' actual monthly expenses are $4,448. But Defendant challenges the propriety of several expense items, and the Court has independent concerns regarding others. *See Twitchell v. Educ. Credit Mgmt. Corp.* (*In re Twitchell*), 04.2 I.B.C.R. 66, 68 (Bankr. D. Idaho 2004) (examining a debtor's expenses in a § 523(a)(8) action based upon the Court's independent skepticism). The Court will address these issues below.

---

[4] Debtors received a tax refund of $1,723 for 2003, and a refund of $2,230 for 2004. Exs. B, K. While a tax refund is not strictly "income," and there was no evidence presented regarding what Debtors could expect from future tax refunds, their discretionary income may be significantly higher due to such future refunds.

MEMORANDUM OF DECISION - 6

### E. Mr. Berchtold's efforts to pay the student loan debt.

Mr. Berchtold testified that immediately following his departure from Palmer College, he made a few payments towards his outstanding student loans. Defendant's records confirm that Mr. Berchtold made two payments of approximately $500 in January and February of 2003, and one other payment of approximately $70 in April 2004. Ex. E. Mrs. Berchtold testified that she and her husband considered different repayment plans, but did not pursue them because, in their opinion, they could not even afford the repayment plan requiring the lowest monthly payment.

Ultimately, Debtors filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code on September 30, 2003, and they commenced this adversary proceeding on August 9, 2004.

### DISCUSSION

The Bankruptcy Code provides that:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

MEMORANDUM OF DECISION - 7

11 U.S.C. § 523(a)(8). Mr. Berchtold bears the burden of proving that repayment of his student loan represents an undue hardship. *Twitchell*, 04.2 I.B.C.R. at 67. Establishing undue hardship requires proof that: (1) he can not maintain a minimal standard of living for himself and any dependents, based on current income and expenses, if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) he has made good faith efforts to repay the loans. *Id*. (citing *United Student Aid Funds, Inc. v. Pena* (*In re Pena*), 155 F.3d 1108, 1111–12 (9th Cir. 1998)).

### A. Minimal standard of living.

Debtors' ability to maintain a minimal standard of living requires the Court to compare their reasonably necessary expenses with their income and determine whether they have funds available to make payments on the student loan debt.[5] In conducting this analysis, the Court must exclude claimed expenses if they are unnecessary to maintaining a minimal standard of living. *See, e.g.*, *id.* at 67–68; *Delbridge v. ASFA Data Corp.* (*In re Delbridge*), 03.2 I.B.C.R. 112, 113

---

[5] Although Mr. Berchtold is the only named plaintiff, the Court must examine their combined income and expenses. *See Fulbright v. United States Dep't of Educ.* (*In re Fulbright*), 319 B.R. 650, 657–58 (Bankr. D. Mont. 2005) (considering a husband and wife's ability to maintain a minimal standard of living when only the husband was a plaintiff); *cf. England v. United States* (*In re England*), 264 B.R. 38, 49–50 (Bankr. D. Idaho 2001) (considering a spouse's potential earning capability when the spouse was not obligated on the student loan debt).

MEMORANDUM OF DECISION - 8

(Bankr. D. Idaho 2003). Several of Debtors' claimed expenses exceed what is necessary for a minimal standard of living.

First, Debtors claim a monthly tithing expense of $480. As the Court has previously explained, a voluntary contribution to a charitable organization, while laudable, is clearly not a necessary expense in this context. *Delbridge*, 03.2 I.B.C.R. at 113; *Ritchie v. Northwest Educ. Loan Ass'n* (*In re Ritchie*), 254 B.R. 913, 921 (Bankr. D. Idaho 2000).

Second, Debtors' overall expenditures for recreation and entertainment are excessive. Debtors budget $90 per month for "recreation," $61.91 for cable television, and $138 for their daughter's "extracurricular" activities, which currently include martial arts lessons. In another student loan discharge case, the Court limited a family of four to $50 per month for recreational expenses. *England v. United States* (*In re England*), 264 B.R. 38, 47 (Bankr. D. Idaho 2001); *cf. Educ. Credit Mgmt. Corp v. Mason* (*In re Mason*), 303 B.R. 459, 465–66 n.5 (Bankr. D. Idaho 2004) (criticizing a gym membership expense for a young, healthy debtor even though he budgeted no entertainment expenses), *aff'd*, 315 B.R. 554 (B.A.P. 9th Cir. 2004). While Debtors may reasonably budget some amount for recreation and entertainment, $290 is certainly too much for a family of three. Indeed, Mr. Berchtold admitted that he did not consider any television expense to be a true necessity. Instead, the Court finds, perhaps generously, that

MEMORANDUM OF DECISION - 9

$200 per month is more than a sufficient sum to be allocated by Debtors to television and other recreational pursuits. Debtors' expenses, therefore, will be further reduced by $90.

A third problematic expense is the $100 per month Debtors spend for Christmas, birthday, and other gifts. Mr. Berchtold testified that he spends this amount because he has several siblings for whom he purchases presents. Given his financial predicament, it is hardly frugal to engage in such a practice. Indeed, Debtors' monthly budget includes a separate $50 per month line item for miscellaneous expenses. Examining their budget as a whole, the monthly expense for gifts is unnecessary and will be subtracted from Debtors' allowed expenses.

Next, Debtors claim $125 per month for medical and dental expenses. However, Mrs. Berchtold explained that as of 2005, she began participating in a "flex plan" sponsored by her employer. Mrs. Berchtold uses this flex plan to set aside $162 per month from her wages and spends the accumulated funds to pay for her family's out-of-pocket medical expenses not covered by her health insurance. At trial, Mrs. Berchtold testified that her flex plan contributions should cover all of her family's out-of-pocket medical expenses. Because the $162 deduction is taken from Mrs. Berchtold's gross wages (presumably on a pre-tax basis) and all of Debtors' medical expenses will be covered by insurance and the flex plan, the budget item for $125 is therefore duplicative. The Court will

MEMORANDUM OF DECISION - 10

reduce their monthly expenses by this amount as well.[6]

Finally, two other expenses deserve mention. Post-bankruptcy, Debtors purchased a third vehicle, a Toyota pickup, for Mr. Berchtold to use while he was still installing satellite dishes. He now uses the truck in his business. Debtors have nine monthly payments of $200 remaining toward the purchase price of the pickup. While this monthly payment is an actual expense, and the Court will not exclude it, it is important to note that it will expire relatively soon.

Debtors also indicated they intend to purchase a home. Their monthly rental payment of $900 and their renters' insurance premium payment of $26 will then be replaced with a combined mortgage and insurance payment of $1,140. Mrs. Berchtold explained that their current residence was to be sold, forcing them to relocate. Given their options, she felt that purchasing the home would be a prudent long-term financial decision and would not cost them significantly more per month. In the absence of any evidence that Debtors have less expensive housing options, the Court accepts Mrs. Berchtold's testimony on this point and will not adjust their expenses for the anticipated house payments.

All told, Mr. Berchtold has failed to satisfy his burden of proving he can not maintain a minimal standard of living if he is required to repay his student

---

[6] Mrs. Berchtold testified that she may reduce her monthly flex plan contribution by as much as one half for 2006. Nevertheless, the Court must rely on Debtors' current monthly income and expenses.

MEMORANDUM OF DECISION - 11

loans. Reducing their claimed expenses of $4,448.04 by the $795 identified above, Debtors' reasonably necessary expenses total $3,653.04. And comparing Debtors' net income of $4,954.72 to their expenses, Debtors have $1,301.68 in net monthly income available to service the student loan debt.

Defendant's Exhibit C shows four repayment plans available to Mr. Berchtold, with monthly payments ranging from $532 for the "income contingent" plan to $1,238 for the "standard" plan. Debtors have the ability to repay Mr. Berchtold's student loans under any of these repayment plans, including the standard plan, which has a term of ten years and an interest rate of $4.375%. Having failed to make the necessary showing under the first part of the undue hardship test, judgment must be entered against Mr. Berchtold.

### B. Additional circumstances.

Because a debtor's failure to meet any single prong of the three-part undue hardship test precludes a discharge of student loan debts, a discussion of the remaining elements is not strictly necessary. Nonetheless, it is appropriate to address the remaining prongs in this case. *See Delbridge*, 03.2 I.B.C.R. at 113–14 (finding debtor failed the first prong but addressing the second and third prongs). Mr. Berchtold's failure to meet his burden under the second and third parts of the test further buttresses the conclusion that repayment will not be an undue hardship for Debtors.

MEMORANDUM OF DECISION - 12

Under the second prong of the undue hardship test, a debtor must show that he or she "will be unable to repay for several years, because of psychiatric problems, lack of useable job skills, severely limited education, physical problems, or *any* other circumstance which will persistently interfere with debtor's ability to repay." *Educ. Credit Mgmt. Corp. v. Mason* (*In re Mason*), 315 B.R. 554, 560 (B.A.P. 9th Cir. 2004) (internal citations omitted).  Mr. Berchtold has not established that other "circumstances" justifying a discharge exist here.

While Debtors both testified they suffer from some medical problems, Mrs. Berchtold is gainfully employed as a nurse and none of the evidence indicated that her circumstances would change.  Mr. Berchtold has usable construction knowledge and skills, and is also able to perform physically demanding work, albeit on a somewhat reduced schedule.  He testified that he expects to be able to continue this work for an additional five to ten years.  Thus, whatever his medical limitations are, he does not consider them to prevent him from working in some capacity through the foreseeable future.  Moreover, Mr. Berchtold has a college education and many years of work experience, which certainly have value in the workforce.

Debtors' financial picture may also improve in the near future.  In a few months, Debtors will make their final payment on the Toyota, giving them an additional $200 of discretionary monthly income.  Further, if Mrs. Berchtold's

MEMORANDUM OF DECISION - 13

estimate is correct, she can reduce her flex plan contributions in half for 2006, adding approximately $174 to Debtors' monthly income.[7]

In short, Mr. Berchtold failed to offer any persuasive evidence that Debtors are hindered by the type of additional circumstances necessary to satisfy the second prong of the undue hardship test.

**C.  Good faith.**

The good faith prong of the undue hardship test focuses on two factors: a debtor's efforts to obtain employment, maximize income and minimize expenses; and the debtor's efforts to negotiate a repayment plan.  *Mason*, 315 B.R. at 563.  Mr. Berchtold's employment history does not reflect an attempt to maximize income.

Without corroborating evidence to support Mr. Berchtold's claim that he can not work more than six hours per day, four days per week, the Court is not persuaded that Mr. Berchtold is physically limited in this way.  If Mr. Berchtold is capable of working more but is not, he is voluntarily under-employed and he has not displayed good faith in dealing with his financial obligation to Defendant.  *See Oyler v. Educ. Credit Mgmt. Corp*. (*In re Oyler*), 397 F.3d 382,

---

[7] Mrs. Berchtold testified that her flex plan contributions for 2005 are based in part on her requiring sinus surgery, an expense that hopefully will not reoccur.  Reducing Mrs. Berchtold's bi-weekly flex plan contributions from $161 to $80.50 would save Plaintiff $174 per month, without regard to any tax consequences.  ($80.50 x 26 pay periods per year = annual savings of $2,093, which average $174 per month.)

MEMORANDUM OF DECISION - 14

385 (6th Cir. 2005) (adopting the undue hardship test used in the Ninth Circuit, and criticizing a debtor that chose low-paying employment when he had other options). If his claim is accurate, his conduct still falls short.

Even taking as true Mr. Berchtold's unsupported assertion that he is physically unable to work at his job for more than six hours per day, four days per week, Mr. Berchtold should have a substantial amount of time each week to search for either more lucrative employment, or perhaps a second, less physically demanding sort of job. But Mr. Berchtold appears content with his current arrangement, which to the Court is surprising considering he earned gross revenue of only $3,000 during eight months in 2004. Put another way, even given his part-time schedule, Mr. Berchtold could have earned more working at a minimum wage job.[8]

On this record, it appears almost any other job would be better for Mr. Berchtold financially, and perhaps a less physically demanding job would allow him to work more hours, thereby potentially increasing his income. And if Mr. Berchtold changed jobs, perhaps he may not need the pickup. With only two vehicles, Debtors' automobile insurance and operating expenses would be diminished, and selling the vehicle would immediately reduce their monthly debt

---

[8] The minimum wage in Idaho is $5.15. Idaho Code § 44-1502. Assuming Mr. Berchtold worked six hours per day, four days per week, he would average 103 hours per month. Over eight months, he would gross $4,244, a forty-one percent increase over his actual gross earnings for 2004.

MEMORANDUM OF DECISION - 15

service.

At bottom, Mr. Berchtold's limited efforts at maximizing his income do not reflect good faith for someone with his education and experience, which is required to allow the Court, in good conscience, to relieve him of his student loan debt. *Cf. United Student Aid Funds, Inc. v. Nascimento* (*In re Nascimento*), 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999) (noting that the proper inquiry under the first prong of the undue hardship test focuses on whether it would be unconscionable to require a debtor to take steps to earn more income).

## CONCLUSION

Mr. Berchtold failed to prove that the repayment of his student loan debt would represent an undue hardship for Debtors. They are capable of repaying the loans and maintaining a minimal standard of living; their financial situation is not burdened by additional circumstances that will prevent them from being able to make payments on the loan for a significant portion of the repayment period; and Mr. Berchtold has not demonstrated good faith by attempting to maximize income. Mr. Berchtold's debt to Defendant, therefore, is not subject to discharge under 11 U.S.C. § 523(a)(8).

Counsel for Defendant shall prepare and submit and appropriate form of judgment for entry by the Court. Counsel for Plaintiff shall approve the form of the judgment.

MEMORANDUM OF DECISION - 16

Dated: July 26, 2005

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 17